1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EDWARD L. PRICE,

                  Plaintiff,

     v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

                Defendant.

CASE NO.    C06-5378FDB-KLS

REPORT AND
RECOMMENDATION

Noted for February 16, 2007

      Plaintiff, Edward L. Price, has brought this matter for judicial review of the denial of his application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Franklin D. Burgess' review.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is sixty-one years old.[1] Tr. 27.  He has a high school education, one year of college course work and past work experience as a painter and an equipment liquidator. Tr. 19, 71, 74.

On September 2, 2003, plaintiff filed an application for disability insurance benefits, alleging disability as of January 1, 1996, due to posttraumatic stress disorder ("PTSD"), anger control and a sleep disorder. Tr. 18, 49, 65.  His application was denied initially and on reconsideration. Tr. 18, 27-29, 33.  A hearing was held before an administrative law judge ("ALJ") on August 29, 2005, at which plaintiff, represented by counsel, appeared and testified. Tr. 330-53.

On October 19, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

    (1)    at step one of the disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability; and

    (2)    at step two, plaintiff had no medically determinable "severe" impairment prior to March 31, 2000, his date last insured.

Tr. 25.  Plaintiff's request for review was denied by the Appeals Council on June 14, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 404.981.

On July 7, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for further administrative proceedings for the following reasons:

    (a)    the ALJ erred in finding plaintiff had no severe impairment;

    (b)    the ALJ erred in assessing plaintiff's credibility;

    (c)    the ALJ erred in assessing the lay witness evidence in the record; and

    (d)    the ALJ erred in failing to call a medical expert to address his alleged onset date of disability.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and, for the reasons set forth below, recommends the ALJ's decision be reversed and this matter be remanded to the Commissioner

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

1    for further administrative proceedings.

2                              <u>DISCUSSION</u>

3          This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

4    Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

5    support the decision.  <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

6    such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson</u>

7    <u>v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

8    a scintilla but less than a preponderance.  <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir.

9    1975); <u>Carr v. Sullivan</u>, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

10   one rational interpretation, the Court must uphold the Commissioner's decision.  <u>Allen v. Heckler</u>, 749 F.2d

11   577, 579 (9th Cir. 1984).

12   I.     <u>Plaintiff's Date Last Insured</u>

13         To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on

14   or before" the date his insured status expired.  <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998); <u>see also</u>

15   <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security

16   statutory scheme requires disability to be continuously disabling from time of onset during insured status to

17   time of application for benefits, if individual applies for benefits for current disability after expiration of

18   insured status).  As noted above, plaintiff's date last insured was March 31, 2000. Tr. 18, 27.  Thus, to be

19   entitled to disability insurance benefits, plaintiff must establish he was disabled prior to or as of that date.

20   <u>Tidwell</u>, 161 F.3d at 601.

21   II.    <u>The ALJ's Step Two Determination</u>

22         To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step

23   sequential evaluation process. 20 C.F.R. § 404.1520.  At step two of that process, the ALJ must determine

24   if an impairment is "severe."  <u>Id</u>.  An impairment is "not severe" if it does not "significantly limit" a

25   claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), ( c);

26   Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and

27   aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

28         An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect her[his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

The ALJ found no evidence in the record of any medically determinable severe impairment prior to plaintiff's date last insured. Tr. 23-25. Plaintiff argues that in so finding, the ALJ improperly evaluated the medical evidence in the record regarding his posttraumatic stress disorder, erred in refusing to assign any weight to a rating of disability issued by the United States Department of Veterans Affairs ("VA"), and erred by ignoring well established case law concerning retrospective medical diagnoses. The undersigned agrees the ALJ erred in this regard, and finds the deficiencies in the ALJ's step two determination warrants remand for further administrative proceedings.

A.      The Objective Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir.,2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

Plaintiff argues that in finding his posttraumatic stress disorder to be non-severe, the ALJ ignored the presence of symptoms which established the existence of that disorder prior to March 31, 2000, his date last insured. The mere existence of an impairment or its symptoms, however, is insufficient to establish the requisite level of severity at step two of the disability evaluation process. Rather, plaintiff must be able to show that his impairment or symptoms had more than a minimal effect on his ability to perform basic work activities. The objective medical evidence currently in the record, however, fails to establish that his PTSD more than minimally affected his ability to work prior to his date last insured.

The objective medical evidence in the record is scant, and that evidence which is contained therein dates from no earlier than April 2003. Plaintiff submitted for consideration a psychological report from David C. Mansfield, Ph.D., which, although not dated, appears to have been issued sometime in July 2003. <u>See</u> Tr. 309. Dr. Mansfield conducted both a mental status examination and psychological testing, and

diagnosed plaintiff with chronic and severe PTSD, a moderate dysthymic disorder, a post-concussional

cognitive disorder, and a global assessment of functioning ("GAF") score, both current and within the past

year, of 35. Tr. 216-21.  Dr. Mansfield further opined in relevant part as follows:

> Edward Price suffers a longstanding posttraumatic condition consistent with a diagnosis
> of Posttraumatic Stress Disorder.  In addition he suffers a moderate depression, and
> appears to have longstanding memory deficits. . . .
>
> The impact of psychological functioning on overall functional capacity is as follows: The
> combination of (1) depression and associated symptoms of social withdrawal, loss of
> motivation, problems with self-esteem, and, in general, the absence of pleasurable
> activities, plus (2) cognitive impairment secondary to brain trauma, as well as (3) PTSD
> and its associated withdrawal, numbing, disturbed sleep, hypervigilance, and over
> control result in significant restrictions of activities of daily living.  The traumas
> associated with the war have resulted in significant social withdrawal with an
> interpersonal history colored by sensitivity to judgment by others, an inability to accept
> direction or authority, and generalized hypervigilance. . . .
>
> Deficiences of concentration, persistence and pace were evident throughout the
> assessment. . . . episodes of deterioration or decompensation in work or work-like
> settings are clearly evident in the work history and during testing.
>
> In summary, hypervigilance, self-esteem issues, and depression, in combination with
> other symptoms of PTSD have significantly limited his ability to sustain employment.

Id.

Dr. Mansfield also completed a psychiatric review technique form in late August 2003, in which he

diagnosed plaintiff with an organic mental disorder, an affective disorder, and an anxiety disorder. Tr. 275,

277, 279.  Dr. Mansfield also found plaintiff to have marked restrictions in his activities of daily living,

marked difficulties in maintaining social functioning and in maintaining concentration, persistence or pace,

and four or more episodes of decompensation. Tr. 284.  Dr. Mansfield, however, specifically noted that his

assessment of plaintiff's impairments and their resulting mental functional limitations concerned only the

period from July 24 to July 25, 2003. Tr. 274.

Another psychiatric review technique form was completed by Trevelyan Houck, Ph.D., and Thomas

Clifford, Ph.D., two non-examining consulting psychologists, in late October 2003.  Their assessment of

plaintiff's mental impairments covered the period from January 1, 1996, plaintiff's alleged onset date of

disability, to March 31, 2000, the date his insured status expired. Tr. 288.  Based on their review of the

medical evidence contained in the record, Drs. Houck and Thomas found insufficient evidence of a mental

impairment or mental impairment-related symptoms for that period. Tr. 288-300.

The only other medical source statement in the record is a psychological evaluation performed by

Gary Sacks, Ph.D., in mid-October 2003.  With respect to plaintiff's performance during his mental status

examination, Dr. Sacks remarked in relevant part:

> He suffers significant survivor guilt.  He appears plagued by intrusive memories of
> Vietnam.  He suffered significant hypervigilance as well as emotional and physiologic
> reactivity during today's interview.  He had a difficult time facing his memories of
> Vietnam and was quite upset about the need to go to the interview today.

Tr. 309-10.  Based on plaintiff's reported history, Dr. Sacks also opined that "[h]e was clearly involved in

combat sufficient to potentially cause symptoms of post traumatic stress disorder." Tr. 311.

Indeed, Dr. Sacks noted that plaintiff had "described severe symptoms of" posttraumatic stress

syndrome, and that he appeared to be "suffering signs of depression." Id.  As did Dr. Mansfield, Dr. Sacks

diagnosed plaintiff with chronic and severe PTSD, associated with depression, as well as a current GAF

score of 45. Id.  In conclusion, Dr. Sacks opined that while plaintiff "might improve to some degree" with

psychoactive medication and counseling, "at present," he appeared "to suffer severe occupational and social

interference due to symptoms of PTSD." Id.

Plaintiff argues Dr. Sacks' diagnosis of PTSD in mid-October 2003, in combination with his own

testimony that the symptoms found by Dr. Sacks had been present since 1996, establish the presence of this

disorder prior to his date last insured.  As noted above, however, this is insufficient to meet the burden of

proof required at step two of the disability evaluation process.  That is, while plaintiff may have testified

that he had the same symptoms back in 1996, Dr. Sacks gave no indication he was providing an opinion

concerning plaintiff's symptoms other than with respect to the symptoms he was exhibiting in mid-October

2003.  The same is true with respect to the opinion provided by Dr. Mansfield.

Nevertheless, the undersigned notes that Dr. Mansfield found plaintiff's PTSD and memory deficits

to be "longstanding" in nature.  Dr. Sacks also specifically linked plaintiff's PTSD symptoms to his time

spent in and experiences with the war in Vietnam.  Clearly, therefore, these two examining psychologists

gave indications that plaintiff's mental impairment and related symptoms may have originated long before

his insured status had expired.  This ambiguity should have triggered the ALJ's duty "to fully and fairly

develop the record and to assure that the claimant's interests are considered," by further investigating this

issue. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted); Mayes v. Massanari,

276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further develop record triggered when there is ambiguous

evidence or record is inadequate to allow for proper evaluation of evidence).

1          B.       The VA's Determination of Disability

2          Although a determination by the United States Department of Veterans Affairs about whether a

3   claimant is disabled is not binding on the Social Security Administration ("SSA"), an ALJ must consider

4   that determination in reaching his or her decision. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir.

5   2002); 20 C.F.R. § 404.1504.  Further, the ALJ "must ordinarily give great weight to a VA determination

6   of disability." McCartey, 298 F.3d at 1076.  This is because of "the marked similarity" between the two

7   federal disability programs:

8              Both programs serve the same governmental purpose--providing benefits to those
               unable to work because of a serious disability.  Both programs evaluate a claimant's
9              ability to perform full-time work in the national economy on a sustained and continuing
               basis; both focus on analyzing a claimant's functional limitations; and both require
10             claimants to present extensive medical documentation in support of their claims. . . .
               Both programs have a detailed regulatory scheme that promotes consistency in
11             adjudication of claims.  Both are administered by the federal government, and they share
               a common incentive to weed out meritless claims.  The VA criteria for evaluating
12             disability are very specific and translate easily into SSA's disability framework.

13   Id.  However, "[b]ecause the VA and SSA criteria for determining disability are not identical," the ALJ

14   "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so

15   that are supported by the record." Id. (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5ᵗʰ Cir. 2001).

16          A rating of disability issued by the VA, therefore, "does not necessarily compel the Social Security

17   Administration to reach an identical result." Id. (citing 20 C.F.R. § 404.1504).  Section 404.1504 of the

18   SSA's regulations provides in relevant part:

19             A decision by . . . any other governmental agency about whether you are disabled . . . is
               based on its rules and is not our decision about whether you are disabled . . . We must
20             make a disability . . . determination based on social security law. Therefore, a
               determination made by another agency that you are disabled . . . is not binding on us.
21
22   20 C.F.R. § 404.1504.  Thus, because, as discussed above, "the criteria applied by the two agencies" are not

23   identical, "[a] VA rating of total and permanent disability is not legally binding on the Commissioner."

24   Chambliss, 269 F.3d at 522.

25          The record contains a decision by the VA that found plaintiff to have a seventy percent disability

26   rating due to posttraumatic stress disorder effective April 25, 2003, the date he filed his disability claim with

27   the VA. Tr. 182.  That decision was based on medical records and other evidence dating primarily from

28   early December 2002 to late December 2004. Tr. 183.  Thus, while the VA disability decision noted

     plaintiff's military service for the period of September 26, 1968, to June 23, 1975 (Tr. 182), it did not

REPORT AND RECOMMENDATION
Page - 8

reference or make any specific findings with respect to the presence of PTSD symptoms, disabling or otherwise, prior to April 25, 2003.

In his decision, the ALJ mentioned the VA disability rating decision, but did not state what weight, if any, he was giving it. Tr. 22.  Plaintiff argues this was error.  Despite the VA rating decision's lack of specific reference to the presence of earlier PTSD symptoms, the undersigned agrees.  As explained above, the ALJ's failure to give great weight to the VA disability rating decision or provide specific reasons for not doing so normally constitutes clear error.

The fact that plaintiff's VA disability rating decision was issued some three years after the date his insured status expired, furthermore, does not necessarily diminish its relevance. See Allord v. Barnhart, 455 F.3d 818, 820-21 (7th Cir. 2006) (finding VA disability rating decision issued four years after claimant's date last insured to be entitled to "some weight," in light of evidence in record demonstrating claimant's PTSD "was of long standing").  Here too, the medical evidence in the record, i.e., the opinions provided by Dr. Mansfield and Dr. Sacks, indicate plaintiff's PTSD was of longstanding origin and was related to his experiences during the Vietnam war.

C.      Retrospective Diagnoses

Medical reports "containing observations made after the period for disability are relevant to assess the claimant's disability" during that period. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988); Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir. 1975).  Because such reports "are inevitably rendered retrospectively," they "should not be disregarded solely on that basis." Smith, 849 F.2d at 1225 (citing Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985)).  However, "claimants who apply for benefits for a current disability after the expiration of their insured status" will be entitled to them only if they can "prove that the current disability has existed continuously since a date on or before the date that their insurance coverage lapsed." Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1462 (9th Cir. 1995).

Plaintiff argues the ALJ ignored the opinions of Dr. Mansfield and Dr. Sacks simply because they were rendered after his date last insured, and thus ignored the above well-established case law regarding the relevance of retrospective medical opinions.  It is not clear that the ALJ rejected the opinions of these two examining psychologists simply because they were issued after plaintiff's date last insured.  Certainly, the ALJ did not just ignore them, as he summarized those opinions in detail in the body of his decision. See Tr.

20-22.  On the other hand, the ALJ provided no specific analysis of the opinions of Drs. Mansfield and Sacks, other than to state that "there was no medical evidence prior to March 31, 2000," that plaintiff "had a severe impairment." Tr. 24.  This was insufficient, again especially in light of the fact that both medical sources indicated plaintiff's PTSD was longstanding.

III.    The ALJ's Assessment of Plaintiff's Credibility

        Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering.  O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

        In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

        The ALJ found plaintiff's testimony not credible regarding the issue of whether he had a severe medical impairment prior to his date last insured in part because his testimony was "not supported by any objective medical evidence."  Tr. 24.  A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement.  Regennitter v. Commissioner of

SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Plaintiff argues this reason for discounting his credibility was not valid, because the record contains objective evidence, medical and otherwise, of his PTSD, including the findings of Dr. Mansfield and his VA disability rating decision.

The evidence in the record to which plaintiff points, however, does not in itself establish he had a severe impairment prior to his date last insured.  For example, as discussed above, no medical source in the record, including Dr. Mansfield and Dr. Sacks, has presented findings establishing plaintiff had symptoms that more than minimally affected his ability to do basic work activities.  The same is true with respect to the VA disability rating decision, which was not made effective until late April 2003.  On the other hand, also as explained above, the opinions of Drs. Mansfield and Sacks indicate plaintiff's PTSD was of longstanding origin.  As such, the ALJ erred in simply dismissing this evidence, as further development of the record may have revealed additional evidence that supports plaintiff's allegations.

Plaintiff further argues the ALJ erred in discounting his credibility because he had not received any treatment or medication for his mental impairment prior to being evaluated by Dr. Mansfield, and that no physician or mental health practitioner had referred him to Dr. Mansfield. Tr. 24.  Given the facts of this case, the undersigned agrees.  Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

On the other hand, this is a questionable basis on which to discount plaintiff's credibility here.  For example, the fact that a claimant does "not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude" that a medical source's assessment of the claimant's condition is inaccurate. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting that those with depression often do not recognize their condition reflects potentially serious mental illness); see also Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (holding invalid ALJ's rejection of claimant's assertions regarding his depression due to failure to seek psychiatric treatment, finding questionable practice of chastising one with mental impairment for exercise of poor judgment in seeking rehabilitation).

In both the statement he submitted with his application for disability benefits and the testimony he provided at the hearing, plaintiff related that while he had been experiencing symptoms of PTSD for many years prior to his evaluation by Dr. Mansfield, he did not become aware of the possibility those symptoms

might be due to PTSD until April 2003. See Tr. 138-39, 341, 343-44. Soon thereafter, plaintiff did see Dr. Mansfield based on a referral from a friend of his. Tr. 24, 343-44. The ALJ should have taken this into account in determining whether the reasons plaintiff provided for not seeking treatment earlier were valid. The ALJ's failure to do so thus was improper as well.

The ALJ also discounted plaintiff's credibility in part due to his activities of daily living, such as going out of the house to walk, garden and have lunch either by himself or sometimes with his spouse, reading e-mail, performing most household chores and fixing meals. Tr. 24. According to the ALJ, these activities showed plaintiff was not limited from all work-like activity. Id. Plaintiff argues those activities do not undermine his credibility, because they are not inconsistent with his claimed limitations, and the ALJ failed to recognize he is able to function largely because he has stayed home from work since 1995, and has controlled his environment. The undersigned agrees.

To determine whether plaintiff's symptom testimony is credible, the ALJ may consider his daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if plaintiff can "spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. Further, plaintiff need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id.

In this case, the record shows plaintiff's main complaint is that he does not like to be where he feels exposed or go out of the house – and always has to take different routes and is always watching for danger when he does – because he is afraid for his safety. See Tr. 139-41, 344, 347-48. Thus, while plaintiff may occasionally go out of the house by himself or with his wife, he stated that he does not like to and that he has to take certain extra precautions that create hardships for him and others when he does. In addition, the ability to perform household chores and to fix meals at home are not the type of activities that one would expect to be significantly affected by the above alleged mental functional limitations.

As noted above, the ALJ properly may consider plaintiff's prior inconsistent statements concerning his symptoms and other testimony that "appears less than candid" as well. Smolen, 80 F.3d at 1284. Here, the ALJ noted that while plaintiff stated he did not like to leave the house, his statements to Dr. Mansfield showed he did go out of the house at times. Tr. 24, 218. However, the fact that plaintiff may go out of the house to do certain activities at times, is not necessarily inconsistent with his statement that he does not like

to do so.  Indeed, as discussed above, plaintiff stated that when he does go outside he feels the need to take certain extra precautions that has seriously impacted the quality of his life.

The ALJ also found that while plaintiff reported he has no friends and avoids socializing, he reads e-mail. Tr. 24.  The record, however, does not indicate whose e-mails he reads, or the extent to which he corresponds with others via e-mail.  In addition, the undersigned finds no inherent inconsistency between reading e-mail and not spending time socializing or in person with friends.  Indeed, spending time reading e-mail or corresponding with others electronically can be a very effective means of communicating with the outside world while at the same time avoiding face-to-face contact with others.

The ALJ further noted that plaintiff's testimony conflicted with statements by his wife and family friend that he has fatigue and cannot lift his arms or grip things. Tr. 24.  Plaintiff's wife, however, did state that plaintiff began noticing problems with his arms becoming progressively weaker since sometime in 1991 or 1993. Tr. 195.  Further, as with some of plaintiff's activities of daily living the ALJ noted, plaintiff has not alleged disability due to any physical impairments, so any inconsistency in plaintiff's statements regarding his fatigue and ability to use his arms and hands is questionable as well.  For the same reason, the fact that plaintiff may not have mentioned this problem to any medical source does not in itself necessarily reflect negatively on plaintiff's allegations concerning his mental functional limitations.

The ALJ, on the other hand, was not necessarily remiss in discounting plaintiff's credibility for the following reason:

> It is significant that his current VA pension of $2,400.00 is more earnings than he ever made during his total work history as shown by his earnings record (Exhibit 2D).  This implies a poor motivation to returning to work as he is making more on a tax-free-basis then he ever received when he did work, and indicates that he has no incentive to work. Dr. Mansfield even noted in his report that the impetus for the claimant to seek application for SSA benefits was his wife's impending retirement (Exhibit 2F).  Even his wife reported to Dr. Mansfield that he was seeking work in 2003 and believed that his age was making it difficult for him to find employment at that time, though he's made some effort to find employment as of late (Exhibit 2F).

Tr. 24.  The ALJ may consider motivation and the issue of secondary gain in rejecting symptom testimony. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

Plaintiff argues this reason for discounting his credibility is not persuasive, as none of the medical sources in the record alleged malingering on his part or exaggeration for the purpose of obtaining benefits.

REPORT AND RECOMMENDATION
Page - 13

1   Evidence or a finding of malingering, however, is not required in order for an ALJ to discount a claimant's

2   credibility on the basis of secondary gain.  Neither <u>Tidwell</u> nor <u>Matney</u> mandates such a requirement.  In

3   addition, evidence of lack of motivation and potential secondary gain may be considered as they also are

4   factors that would come within the "ordinary techniques of credibility evaluation" the ALJ may employ in

5   determining a claimant's credibility.  <u>Smolen</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).

6          Here, while receipt of VA benefits alone may not suffice to show plaintiff lacked motivation or was

7   influenced by secondary gain, the ALJ reasonably could infer that given the amount of such benefits he was

8   receiving, and the statements made by his spouse and by Dr. Mansfield, plaintiff was not entirely disposed to

9   returning to work.  Thus, the undersigned finds no error here.  On the other hand, as discussed above, the

10  remainder of the ALJ's credibility determination was problematic at best.  Accordingly, the Commissioner

11  on remand shall re-evaluate plaintiff's credibility.

12  IV.    <u>The ALJ's Assessment of the Lay Witness Evidence in the Record</u>

13         Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into

14  account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to

15  each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d, 503, 511 (9th Cir. 2001).  An ALJ may discount lay

16  testimony if it conflicts with the medical evidence. <u>Id.</u>; <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir.

17  1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  In rejecting

18  lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for

19  dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those

20  reasons," and substantial evidence supports the ALJ's decision. <u>Lewis</u>, 236 F.3d at 512.  The ALJ also may

21  "draw inferences logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.

22         Here, the ALJ discounted the statements of plaintiff's wife and family friend because they were not

23  supported by the objective medical evidence in the record and were inconsistent with plaintiff's allegation

24  that he had fatigue and could not lift his arms or grip things. Tr. 24.  As discussed above, however, further

25  development of the record may support plaintiff's allegations regarding the presence of mental functional

26  limitations prior to his date last insured.  In addition, also as discussed above, the statements of plaintiff and

27  his wife were not necessarily inconsistent regarding the use of his arms and hands.  Thus, although the

28  standard for discounting law witness evidence is lower than that for discounting claimant testimony, the

REPORT AND RECOMMENDATION
Page - 14

1  undersigned finds the ALJ failed to meet that standard here as well.

2  V.      Medical Expert Testimony Regarding Onset Date of Disability

3          Plaintiff argues the ALJ erred by failing to call a medical expert to address the onset date of his

4  disability pursuant to SSR 83-20, which sets forth the Commissioner's policy for establishing a claimant's

5  onset date of disability. See 1983 WL 31249.  However, SSR 83-20 comes into play only after plaintiff has

6  met his "ultimate burden" of proving disability prior to the expiration of his insured status. Armstrong v.

7  Commissioner of the Social Security Administration, 160 F.3d 587, 590 (9th Cir. 1998).  In other words, it

8  is only when plaintiff establishes disability and the "record is ambiguous as to the onset date of disability,"

9  that SSR 83-20 requires the ALJ to "assist the claimant in creating a complete record" that "forms a basis

10  for" establishing a disability onset date. Id.

11         Because disability has not yet been proven, SSR 83-20 is not applicable at this time, and thus the

12  ALJ was not required to call a medical expert for the purpose of establishing an onset date of disability.  On

13  the other hand, as discussed above, in light of the opinions of Dr. Mansfield and Dr. Sacks concerning the

14  longstanding nature of plaintiff's PTSD, further development of the record may reveal the presence of more

15  than minimal work-related limitations existing prior to the expiration of plaintiff's insured status.  To that

16  end, the Commissioner may find it necessary to obtain the testimony of a medical expert or additional

17  mental health evaluations.  In that case, such testimony or evaluations should be obtained.

18  VI.     This Matter Should Be Remanded for Further Administrative Proceedings

19         The Court may remand this case "either for additional evidence and findings or to award benefits."

20  Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,

21  except in rare circumstances, is to remand to the agency for additional investigation or explanation."

22  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in

23  which it is clear from the record that the claimant is unable to perform gainful employment in the national

24  economy," that "remand for an immediate award of benefits is appropriate." Id.

25         Benefits may be awarded where "the record has been fully developed" and "further administrative

26  proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

27  1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

28              (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
                evidence, (2) there are no outstanding issues that must be resolved before a

REPORT AND RECOMMENDATION
Page - 15

determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain with respect to whether plaintiff had a severe impairment prior to his date last insured, this matter should be remanded to the Commissioner for further administrative proceedings.  Specifically, on remand, the Commissioner shall re-evaluate the medical evidence in the record, obtain any necessary additional medical expert testimony or mental health evaluations, re-assess plaintiff's credibility and the credibility of the lay witnesses in the record, and, if required, proceed on to steps three through five of the sequential disability evaluation process.

Plaintiff argues that in light of the ALJ's errors in assessing the credibility of the lay witnesses in the record, the statements of those witnesses should be credited as a matter of law.  It is true that when an ALJ errs in evaluating lay witness statements of, those statements may be credited as a matter of law. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is given effect required by federal regulations, it became clear claimant's limitations were sufficient to meet or equal listed impairment).  As noted by the Ninth Circuit, however, the courts do have "some flexibility" in how they apply the "credit as true" rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

The Court of Appeals in Schneider, furthermore, dealt with the situation where, unlike in this case, the ALJ failed to cite any evidence to contradict the statements of five lay witnesses regarding her disabling impairments. See 223 F.3d at 976.  Here, on the other hand, while the ALJ did err in discounting the lay witness statements because they were not supported by the medical evidence in the record, it is not clear that further development of that evidence on remand will support those statements.  The undersigned thus finds it inappropriate to apply the "credit as true" rule at this time.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

1   objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit

2   imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 16,**

3   **2007**, as noted in the caption.

4          DATED this 25th day of January, 2007.

5

6

7                                          Karen L. Strombom
                                           United States Magistrate Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 17